**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| 4709 INCORPORATED, d/b/a | § | CASE NO. 14-10340-TMD |
| MIDTOWN LIVE SPORTS CAFE, | § | |
| | § | (Chapter 11) |
| *Debtor* | § | |

| | | |
|---|---|---|
| 4709 INCORPORATED, d/b/a | § | |
| MIDTOWN LIVE SPORTS CAFE, | § | |
| *Plaintiff* | § | ADVERSARY CASE |
| | § | |
| v. | § | NO. 20-_____-TMD |
| | § | |
| JOHN HOBERMAN, | § | |
| *Defendant* | § | |

**PLAINTIFF'S ORIGINAL APPLICATION FOR INJUNCTIVE RELIEF AND SANCTIONS**

COMES NOW Plaintiff, 4709 Incorporated, d/b/a Midtown Live Sports Café ("4709" or "Debtor") and files this Plaintiff's Original Application for Injunctive Relief and Sanctions and respectfully states as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. Section 1334(a) and the standing order of reference in this District. This matter is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2) (A), (L) and (O).

2. Venue is proper in this District pursuant to 11 U.S.C. Section 1409(a).

**Parties**

3. 4709 is a Texas corporation that may be served by serving the undersigned counsel for Plaintiff.

4. John Hoberman ("Hoberman") is an individual who may be served with process at 2314 Thornton Rd., Austin, Texas 78704, or wherever he may be found.

## Summary of Claims

5. 4709 asks the Court to enforce its prior order confirming 4709's plan of reorganization in the above-captioned and numbered bankruptcy case. Upon confirmation of 4709's plan of reorganization, the below described real property was vested in 4709 free and clear of all liens, including pre-confirmation liens claimed by Hoberman, and, upon confirmation of the plan, Hoberman was permanently enjoined from taking any action against 4709 and the property inconsistent with the provisions of the confirmed plan. Hoberman has now taken action to foreclose said liens in violation of the permanent injunction. 4709 requests that, after notice and hearing, the Court enter a preliminary injunction enjoining Hoberman from taking any further action to foreclose said liens until a final judgment has been entered in this adversary, and that the Court enter a final judgment granting the permanent injunction requested by 4709 herein. Further, 4709 requests that Hoberman be sanctioned for violating the permanent injunction of the confirmed plan.

## Factual Allegations

6. 4709 filed a voluntary petition under Chapter 11 of Title 11, United States Code, on March 3, 2014. On November 23, 2015, 4709's Amended Plan of Reorganization was confirmed. A copy of the Amended Order Confirming Debtor's Amended Plan of Reorganization Dated July 15, 2015, as Modified on November 6, 2015 (the "Confirmation Order") is attached hereto as Exhibit A and incorporated herein by reference. Attached to the Confirmation Order is a copy of the amended plan (the "Plan") which was confirmed by the Court. The Confirmation Order was not revoked pursuant to 11 U.S.C. §1144.

7. Pursuant to the Confirmation Order, Section 9.04 of the confirmed Plan, and 11 U.S.C. §1141(d)(1)(A), 4709 was discharged from its pre-confirmation debts.

8. Section 9.05 of the confirmed Plan provides:

2

>Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Reorganized Debtor. From and after Confirmation, all holders of Claims against the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or the Reorganized Debtor or their assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or the Reorganized Debtor or their assets; (c) from creating perfecting, or enforcing any encumbrance or any kind against the Debtor or the Reorganized Debtor or their assets; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor or to the Reorganized Debtor, except as may be allowed under the Bankruptcy Code; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however*, that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

9. Section 9.01 of the Plan provides "As of the Effective Date, the Reorganized Debtor shall be vested with all Property of the Estate, free and clear of all Liens, Claims and encumbrances except as expressly provided under the Plan". In addition, 11 U.S.C. §1141 (c) provides that, except as provided in subsections (d)(2) and (d)(3) (which are not applicable here) the property dealt with by the Plan is free and clear of all claims and interests of creditors.

10. Pursuant to Section 5.01 of the Plan, Classes 5, 6, and 7 of the Plan consisted of the secured claims of Hoberman and related parties, which were secured by deed of trust liens (collectively referred to herein as the "Hoberman Liens") against property of 4709 located on Cameron Road (the "Property"). Pursuant to Section 6.05 of the Plan, title to the Property was to be transferred to Hoberman by deed in lieu of foreclosure, subject to obligations of Hoberman to lease the Property back to 4709 for ten years (with a five-year option to renew) and to give 4709 an

3

option and right of first refusal to purchase the Property.

11. At the time the Plan was confirmed, 4709's sole shareholder was the late Selena Cash who was, at the time, 87 years old.[1]

12 Subsequent to confirmation, Hoberman did not demand, nor did 4709 execute and deliver, a deed in lieu of foreclosure for the Property. Nor did Hoberman lease the Property back to 4709. Instead, at Hoberman's demand, 4709 continued to make payments to Hoberman in the same amount as it was paying prior to bankruptcy, namely, $19,490.74 per month.[2]

13. In December 2017, approximately two years after the Plan was confirmed, Hoberman came to Selena Cash (then 89 years old) and advised her that he was going to foreclose the purported Hoberman Liens on the Property unless she allowed Anthony Sheridan to take charge of the business. In response to this threat, Selena Cash signed—along with Hoberman and Sheridan—an instrument entitled "Management and Financial Stabilization Agreement" (prepared by Sheridan) that put Sheridan in charge of the business.

14. Starting in 2018, Sheridan began making payments to Hoberman of $5,000 per week.

15. In 2018, Selena Cash filed a Chapter 7 bankruptcy in this Court, being Case No. 18-11043-TMD. In 2019, Selena Cash and J. Patrick Lowe, her Chapter 7 Trustee, filed Adversary Case No. 19-1064-TMD (the "Related Adversary Proceeding") against Sheridan and others.

---

[1] As set forth below, Selena Cash was, prior to her death, the 100% sole shareholder of 4709. Arletha Cash is the Independent Administrator of the Estate of Selena Cash, Deceased. Although Anthony Sheridan purported to take control of 4709, Selena Cash's stock in 4709 was never transferred to Anthony Sheridan. Therefore, her Estate remains the sole shareholder of 4709.

[2] Under the Plan, the lease back payments were significantly less, starting the first year at $13,376.74 per month and ending the tenth year at $9,260.42 per month.

Among other claims were claims to set aside purported actions of Sheridan to take control of 4709 and to transfer legal title to the Property to a Sheridan entity known as CCS Asset Management, Inc.[3]

16. On August 22, 2019, Selena Cash died. Thereafter, her Independent Administrator, Arletha Cash, commenced Probate Case No. C-1-PB-19-001700 in the Travis County Probate Court (the "Probate Case").

17. In October and November 2019, the Bankruptcy Court issued a temporary restraining order against Anthony Sheridan and other defendants in the Related Adversary Proceeding, and a series of agreed orders extending same.

18. Subsequently, the Bankruptcy Court determined that the matters addressed in the Related Adversary Proceeding were largely state court matters that belong in state court. For that reason, the Bankruptcy Court abstained from further consideration of the claims in the Related Adversary Proceeding. On November 15, 2019, the Bankruptcy Court dismissed Ms. Cash's Chapter 7 case and the Related Adversary Proceeding.

19. On November 13, 2019, Arletha Cash filed suit in the Probate Case against Sheridan and the other parties who had been named as Defendants in the Related Adversary Proceeding, maintaining the same claims and causes of action which had been pleaded in the Related Adversary Proceeding, including but not limited to seeking a declaratory judgment that 100% of the ownership of 4709 is held by the probate estate of Selena Cash (the "Probate Estate") and setting aside the purported transfer of the Property to CCS Asset Management, Inc.

---

[3] 4709 asks that the Court take judicial notice of the docket sheet and pleadings in Adversary No. 19-1064-TMD

20. On January 10, 2020, Arletha Cash amended her petition in the Probate Case to add Hoberman as a Defendant.

21. On July 13, 2020, the Probate Court appointed Anthony Icenogle as Receiver over the Property and the businesses conducted thereon.

22. On September 15, 2020, Hoberman filed in the Probate Case Defendants' (*sic*) Motion for Leave to Proceed with Foreclose ("Motion for Leave to Foreclose"). A true and correct copy of the Motion for Leave to Foreclose is attached hereto as Exhibit B and incorporated herein by reference. By this pleading, Hoberman argued that "Because of the existence of a receivership, common law consideration require (*sic*) court approval prior to proceeding with foreclosure. The receivership does not extinguish the mortgagee's security interest; it simply preserves the status quo pending this Court's approval. See, *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339 (Tex. 1976)." In other words, Hoberman requested that the Probate Court allow him to proceed with foreclosure of the purported Hoberman Liens against the Property, even though the Property was included in the receivership.

23. On November 30, 2020, the Travis County Probate Court entered an order granting Hoberman's Motion for Leave to Foreclose, and allowing Hoberman to foreclose no earlier than February 2, 2021. A copy of the Order is attached as Exhibit C

24. As a result of the confirmed Plan, Hoberman no longer has any liens to foreclose and is permanently enjoined from seeking to enforce any liens against property of the Estate.

25. If Hoberman is allowed to foreclose on the Property, Plaintiff will be irreparably harmed. The Property is a significant asset, and damages are inadequate to compensate for a loss of real property. *See Lavigne v. Holder*, 186 S.W.3d 625, 629 (Tex. App.—Fort Worth 2006, no pet.)

6

(every piece of real estate is unique); *N. Cypress Med. Ctr. Operating Co. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (money damages may be inadequate to compensate injured party for loss of property deemed legally "unique" or irreplaceable, a rule most commonly applied to real estate).

26. Plaintiff has incurred attorneys' fees and expenses as a result of Defendant's actions in violating the permanent injunction contained in the confirmed Plan, in an amount to be determined by the Court.

### Request for Relief

27. By this action, Plaintiff is seeking: (1) entry of a Preliminary Injunction enjoining Defendant, his agents, attorneys, and representatives of every type, from taking any further action to foreclose on the Hoberman Liens until the time of trial in this Adversary Proceeding; and (2) after a trial on the merits, entry of an order confirming that Hoberman was and is permanently enjoined from foreclosing on the Hoberman Liens pursuant to the terms of the confirmed Plan.[4]

28. Further, Hoberman should be sanctioned for violating the permanent injunction of the confirmed Plan in at least the amount of attorneys' fees and expenses incurred by 4709 in defending against Hoberman's violations of the permanent injunction.

29. Plaintiffs request that a hearing on the application for a preliminary injunction be held during the week of January 4, 2021.

---

[4] Although legal title to the Property was fraudulently transferred to CCS Asset Management, Inc., 4709 contends that the transfer was fraudulent and void *ab initio* and that the legal title should be restored to 4709. 4709 has an existing equitable interest in the Property and a claim to legal title to the Property. 4709 has filed a lis pendens in the real property records of Travis County, and maintains its equitable and legal claims to title in its suit in the Probate Court.

WHEREFORE, Plaintiff respectfully prays that the Court enter its order granting the relief requested and such other and further relief to which Plaintiff may be justly entitled.

        Respectfully Submitted,

        C. DANIEL ROBERTS, P.C.
        1602 E. Cesar Chavez
        Austin, Texas 78702
        Telephone: (512) 494-8448
        Facsimile: (512) 494-8712
        By: */s/ C. Daniel Roberts*
            C. Daniel Roberts
            Texas Bar No.: 16999200
            droberts@cdrlaw.net

        AND

        */s/ Kemp Gorthey*
        Kemp W. Gorthey
        State Bar No. 08221275
        Email: kemp@gortheylaw.com
        Elizabeth von Kreisler
        State Bar No. 24047273
        Email: elizabeth@gortheylaw.com
        604 West 12th Street
        Austin, Texas 78701
        Telephone: (512) 236-8007
        Facsimile: (512) 479-6417

        ATTORNEYS FOR PLAINTIFF